UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No. 3:16-cr-00169 |
| | ) | Case No. 3:16-cr-00079 |
| v. | ) | Judge Trauger |
| | ) | |
| AHMED MOHAMED SHEIKH OSMAN | ) | |
| | | <u>Final</u> |

## PLEA AGREEMENT

The United States of America, through Donald Q. Cochran, United States Attorney for the Middle District of Tennessee, and Assistant United States Attorney Joseph P. Montminy, and defendant, Ahmed Mohamed Sheikh Osman, through defendant's counsel, Michael Holley, pursuant, in part, to Rule 11(c)(1)(B) and (C) of the Federal Rules of Criminal Procedure, have entered into an agreement, the terms and conditions of which are as follows:

### Charges in This Case

1. Defendant acknowledges that he has been charged in the indictment in the Middle District of Tennessee in case number 3:16-cr-00079 with influencing a federal official by threat, in violation of Title 18, United States Code, Section 115(a)(1)(B) (Count One), and transmitting an interstate threat, in violation of Title 18, United States Code, Section 875(c) (Count Two). Defendant also acknowledges that he has been charged in the indictment in the District of Arizona in case number 2:16-cr-00373 (MDTN case number 3:16-cr-00169) with possession of a firearm by a convicted felon, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2), as well as a forfeiture allegation.

2. Defendant has read the charges against him contained in the indictments, and the charges have been fully explained to him by his attorney. Defendant fully understands the nature and elements of the crimes with which he has been charged.

### Charges to Which Defendant is Pleading Guilty

3. By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to Count Two of the indictment in the Middle District of Tennessee in case number 3:16-cr-00079: transmitting an interstate threat, in violation of Title 18, United States Code, Section 875(c). Defendant also agrees to enter a voluntary plea of guilty to the indictment returned in the District of Arizona in case number 2:16-cr-00373 (MDTN case number 3:16-cr-00169): possession of a firearm by a convicted felon, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2), and to entry of a forfeiture judgment. The Government agrees to dismiss Count One of the indictment in the Middle District of Tennessee in case number 3:16-cr-00079 at sentencing after sentence has been imposed in accordance with this Plea Agreement.

### Penalties

4. The parties understand and agree that the offenses to which defendant will enter a plea of guilty carry the following maximum penalties:

For the charge in Count Two in Middle District of Tennessee case number 3:16-cr-00079: Not more than five (5) years in the custody of the Bureau of Prisons, a fine of not more than $250,000, a term of supervised release of not more than 3 years, and a special assessment of $100.

For the charge in District of Arizona case number 2:16-cr-00373 (MDTN case number 3:16-cr-00169): not more than ten (10) years in the custody of the Bureau of Prisons, a fine of not more than $250,000, a term of supervised release of not more than 3 years, and a special assessment of $100.

## Acknowledgements and Waivers Regarding Plea of Guilty

## Nature of Plea Agreement

5. This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in Middle District of Tennessee case 3:16-cr-00079 and District of Arizona case 2:16-cr-00373 (MDTN case number 3:16-cr-00169).

6. Defendant understands that by pleading guilty he surrenders certain trial rights, including the following:

   a. If defendant persisted in a plea of not guilty to the charges against him, he would have the right to a public and speedy trial. Defendant has a right to a jury trial, and the trial would be by a judge rather than a jury only if defendant, the government, and the Court all agreed to have no jury.

   b. If the trial were a jury trial, the jury would be composed of twelve laypersons selected at random. Defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause, or without cause by exercising so-called peremptory challenges. The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty. The jury would be instructed that defendant is presumed innocent; that the government bears the burden of proving defendant guilty of the charges beyond a reasonable doubt; and that it must consider each count of the indictment against defendant separately.

c. If the trial was held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the judge was persuaded of defendant's guilt beyond a reasonable doubt.

d. At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them. In turn, defendant could present witnesses and other evidence on his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court.

e. At a trial, defendant would have a privilege against self-incrimination so that he could testify or decline to testify, and no inference of guilt could be drawn from his refusal to testify.

7. Defendant understands that by pleading guilty he is waiving all of the trial rights set forth in the prior paragraph. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

### Factual Basis

8. Defendant will plead guilty because he is in fact guilty of Count Two of the indictment in the Middle District of Tennessee in case number 3:16-cr-00079, and the indictment returned in the District of Arizona in case number 2:16-cr-00373 (MDTN case number 3:16-cr-00169). In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt:

SA Patrick Wright, a duly sworn law enforcement officer who is employed as a Special Agent at the Nashville office of the Federal Bureau of Investigation, was conducting official

4

business on January 29, 2016. Pursuant to those official duties and as part of an ongoing federal investigation, SA Wright went to a known address for Ahmed Mohamed Sheikh OSMAN, in Antioch, Tennessee. When arriving at the address in Antioch, Tennessee, SA Wright was unable to make in-person contact with OSMAN. Consequently, SA Wright dialed OSMAN's cell phone number, 615-977-7219 (T1). The call was placed from SA Wright's official cellphone, with number 615-***-****, from Nashville, Tennessee. At the beginning of the conversation, SA Wright identified himself as an FBI Special Agent. OSMAN subsequently identified himself and stated that he did live at the address in Antioch, Tennessee, but that he was in Arizona and would be in Arizona for a few additional days. The phone conversation was described as cordial in nature. At the conclusion of the conversation, SA Wright requested OSMAN call him upon his return to the Nashville, Tennessee area. OSMAN confirmed with SA Wright that the 615-977-7219 number is the best number to reach him. SA Wright suggested that OSMAN look up the number to the FBI office on the internet and verify SA Wright's identity if OSMAN desired.

On February 1, 2016, SA Wright received a series of text messages on SA Wright's cellular telephone from T1. On that date, SA Wright was working in the Middle District of Tennessee. The text messages included, in relevant part, the statements:

> *Yo mr FBI iama be around AZ for a while But you know what send me your name then I will have you booked the first non stop flight to come to me then I will make a luxury hotel reservation for you then when you come around you must open your mouth and tell me what's up
>
> *I will take care of the expense you just tell me what's up How much do you make a year?????
>
> *Not that I am trying to pay you off but I always pay for my freedom in the united States Iam not a refugee

5

> I belong to a rich powerful and the most fearful heros in Somalia
>
> *Let's do business never visit my house you gonna make my mom shocked and me you gonna make me wanna be stupid

SA Wright did not respond to the text messages, but did take a subsequent call from T1 later on February 1, 2016. During that call, OSMAN identified himself and indirectly acknowledged making the previous texts by referencing the texts themselves. SA Wright requested OSMAN make contact with the Phoenix office of the FBI since OSMAN purportedly planned to remain in the Phoenix area for an unknown duration.

On February 28, 2016, SA Wright was in Wilson County, within the Middle District of Tennessee. SA Wright received the following text messages from T1.

> *U r not not available at all u man u u u understand listen u r ignoring my phones okY but I want u to know that NO UNTIED STATES OF AMERICA LAW OFFECIALS scare of a answering me So u r the bad guy and u r dead fffffff dead. (1:29 a.m.)
>
> *I will find u (1:30 a.m.)
>
> *U rrr dead (1:30 a.m.)
>
> *Fffffffff fuck u and who u work for u fake ass
>
> *U lied to me
>
> *U r a lying FBI yyyyyyy??????
>
> *U made a wrong turn
>
> *Just wait
>
> *U r a talking steak

6

*HXaaa

*U r dead (1:44 a.m.)

*Dead (1:44 a.m.)

*U r not FBI

*U r haaaaaaa u made a wrong fucken turn

*U r so fucken dead dead dead (1:45 a.m.)

*Jus wait

*Soon

*U think a hillbilly ass like u would call me and use FBI title well u r and all ur family ur coworkers a fucken even everyone knows u's life is to be (1:51 a.m.)

*terminated (1:52 a.m.)

*Eliminated (1:52 a.m.)

*Erased (1:53 a.m.)

*Desposed (1:53 a.m.)

*Ok no answering my calls well I will spend money time lives fuck all resources in identifying u and ur family all ur love ones (3:55 a.m.)

*Stupid fuck (3:55 a.m.)

On March 1 and March 3, 2016, SA Wright received additional threatening text messages from T1.

At approximately 4:23 a.m. on March 3, 2016, SA Wright received a threatening voicemail message. SA Wright's call log reflected the call originated from T1. SA Wright identified the caller from the March 3, 2016 4:23 a.m. call as the same voice with whom he had spoken to on the two previous occasions (January 29, 2016, and February 1, 2016), and who identified himself as Ahmed Mohamed Osman.

7

On March 4, 2016, SA Wright received more threatening text messages from T1.

Pursuant to an authorized arrest warrant signed by the Honorable Joe B. Brown, United States Magistrate Judge, Middle District of Tennessee, Special Agents and Task Force Officers of the Federal Bureau of Investigation located and arrested OSMAN at the Redwood Motel, Room 105, 470 North Arizona Avenue, Chandler, Arizona on March 5, 2016. A consent search of the hotel room revealed a loaded Ruger 9mm pistol, model SR9c, serial number 332-02598, that was located under the pillow of the bed. Additionally, a Cricket cellular telephone was found near the gun. Law enforcement photographed several of the text messages described above that were sent to SA Wright's official cellphone.

Later that day, at the FBI Office in Phoenix, OSMAN waived his *Miranda* rights and gave an audio-recorded statement. In short, OSMAN admitted to sending the texts. However, he claimed that he did not believe the victim was an FBI Agent.

On or about September 17, 2013, in Navajo County Superior Court, Arizona, OSMAN was sentenced for Attempted Transportation of Marijuana for Sale, in case number CR 2013-675, a felony, for which he received a sentence of 2 years' probation. On March 5, 2016, OSMAN knew that he was a convicted felon and that he could not lawfully possess a firearm.

ATF determined that the seized Ruger pistol is a firearm as defined by Title 18, United States Code, Section 921(a)(3); and that the firearm was not manufactured in the state of Arizona, thus affecting interstate or foreign commerce.

This statement of facts is provided to assist the Court in determining whether a factual basis exists for defendant's plea of guilty and to assess relevant conduct for purposes of the United States

8

Sentencing Guidelines. The statement of facts does not contain each and every fact known to the defendant and to the United States concerning defendant's and/or others' involvement in the offense conduct and other matters.

As set forth above, OSMAN had previously been convicted of a crime punishable for a term exceeding one year (i.e. a felony) and knew that he had been convicted of said crime prior to the date alleged in the District of Arizona indictment. OSMAN agrees that following the Supreme Court's decision in *Rehaif v. United States*, the charging language contained in the District of Arizona indictment is insufficient as it did not require a Federal Grand Jury to find that OSMAN knew he was a felon at the time he possessed the firearm and ammunition listed above. OSMAN hereby agrees to plead guilty to being a felon in possession and waives his rights to have the United States re-present his case to the Grand Jury and seek another indictment post-*Rehaif*.

## Sentencing Guidelines Calculations

9. The parties understand that the Court will take account of the United States Sentencing Guidelines (hereinafter "U.S.S.G."), together with the other sentencing factors set forth at 18 U.S.C. § 3553(a), and will consider the U.S.S.G. advisory sentencing range in imposing defendant's sentence. The parties agree that the U.S.S.G. to be considered in this case are those effective at the time of sentencing.

10. For purposes of determining the U.S.S.G. advisory sentencing range, the United States and the defendant agree to the following calculations pursuant to Rule 11(c)(1)(B), but the parties understand that the sentence agreed to herein pursuant to Rule 11(c)(1)(C) is not dependent on these calculations.

9

11. **Offense Level Calculations**

   a. The parties agree that the adjusted offense level for the two charges the defendant is pleading guilty to is 22. Regarding the 18 U.S.C. § 875(c) charge, the base offense level is 12 on account of U.S.S.G. § 2A6.1(a)(1), two points are added on account of U.S.S.G. § 2A6.1(b)(2)(A), and six points are added on account of U.S.S.G. § 3A1.2(b); consequently, the adjusted offense level is 20. Regarding the 18 U.S.C. § 922(g) charge, the base offense level is 20 on account of U.S.S.G. § 2K2.1(a)(4)(A); the adjusted offense level remains 20. Lastly, pursuant to U.S.S.G. § 3D1.4, two units results in an increase of two offense levels. Thus, the adjusted offense level for the two charges the defendant is pleading guilty to is 22.

   b. Assuming the defendant clearly demonstrates acceptance of responsibility, to the satisfaction of the United States, through his allocation and subsequent conduct prior to the imposition of sentence, a 2-level reduction will be warranted, pursuant to U.S.S.G. Section 3E1.1(a). Furthermore, because the defendant gave timely notice of his intention to enter a plea of guilty, thereby permitting the United States and the Court to allocate their resources efficiently, the United States will move for an additional one-level reduction pursuant to U.S.S.G. Section 3E1.1(b).

   c. Therefore, the parties agree to recommend to the Court a final offense level of 19 (the "Recommended Offense Level"). Defendant understands that the offense level as ultimately determined by the Court (the "court-determined offense level") may be different from the Recommended Offense Level.

Defendant likewise understands that the guidelines range as ultimately determined by the Court (the "court-determined guidelines range") may be based on an offense level different from the Recommended Offense Level.

12. **Criminal History**

   a. The parties have no agreement as to the Criminal History category, but the parties anticipate his Criminal History Category will be Category I.

13. Defendant is aware that the Recommended Offense Level is a prediction, not a promise, and is not binding on the Probation Office or the Court. Defendant understands that the Probation Office will conduct its own investigation and make its own recommendations, that the Court ultimately determines the facts and law relevant to sentencing, that the Court's determination govern the final guidelines calculations, and that the Court determines both the final offense level and the final guidelines range. Accordingly, the validity of this agreement is not contingent upon the Probation Officer's or the Court's concurrence with the above calculations. In the event that the Probation Office or the Court contemplates any U.S.S.G. adjustments, departures, or calculations different from those recommended above, the parties reserve the right to answer any inquiries and to make all appropriate arguments concerning the same.

### Agreements Relating to Sentencing

14. The plea agreement is governed, in part, by Federal Rule of Criminal Procedure 11(c)(1)(C). That is, the parties have agreed that the sentence imposed by the Court shall include a term of imprisonment of thirty (30) months in the custody of the Bureau of Prisons and three (3) years of supervised release. Other than the agreed terms of incarceration, the parties have agreed that the Court remains free to impose the sentence it deems appropriate. If the Court accepts and imposes the agreed term of incarceration set forth herein, the defendant may not withdraw this plea

11

as a matter of right under Federal Rule of Criminal Procedure 11(d). If, however, the Court refuses to impose the agreed term of incarceration set forth herein, thereby rejecting the plea agreement, or otherwise refuses to accept defendant's plea of guilty, either party shall have the right to withdraw from this plea agreement.

15. Defendant understands that any recommendation by the Court related to location of imprisonment is not binding on the Bureau of Prisons.

16. Defendant agrees to pay the mandatory special assessment of $200 with a check or money order payable to the Clerk of the U.S. District Court.

### Forfeiture of Specific Property

17. Defendant acknowledges that he has subjected personal property to forfeiture, namely the following property:

    a.    One Ruger 9mm pistol, model SR9c, bearing serial number 332-02598,

    b.    Twenty-Seven (27) 9mm Luger rounds of full metal jacket ammunition,

    c.    One Black nylon holster, and

    d.    Two 9mm ammunition magazines.

(hereinafter collectively referred to as "Subject Property").

18. By entry of a voluntary plea of guilty to the indictment returned in the District of Arizona in case number 2:16-cr-00373: possession of a firearm by a convicted felon, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2), defendant acknowledges that the Subject Property is subject to forfeiture pursuant to Title 18, United States Code, Section 924(d) by 28 U.S.C. United States Code, Section 2461 and defendant agrees that the Subject Property had a substantial connection to the crime of conviction in that it is a firearm or

12

ammunition involved in or used in a knowing violation Title 18, United States Code, Section 922(g)(1).

19.  Prior to sentencing, Defendant relinquishes all claim, title, and interest to the Subject Property and agrees to the entry of a Preliminary Order of Forfeiture forfeiting the Subject Property to the United States and further agrees to the seizure of this property so that this property may be disposed of according to law.

20.  Defendant is unaware of any third party who has an ownership interest in, or claim to, the Subject Property and will cooperate with the United States during the ancillary stages of any forfeiture proceedings to defeat the claim of a third party in the event a third party files a claim.

21.  Defendant understands that forfeiture of this property shall not be treated as satisfaction of any fine, cost of imprisonment, or any other penalty the Court may impose upon defendant in addition to the forfeiture judgment.

## Presentence Investigation Report/Post-Sentence Supervision

22.  Defendant understands that the United States Attorney's Office, in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing, shall fully apprise the District Court and the United States Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against him, as well as any related matters. The government will make known all matters in aggravation and mitigation relevant to the issue of sentencing.

23.  Defendant agrees to execute truthfully and completely a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the United States Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the Probation Officer. Defendant understands that providing false or incomplete information, or refusing to

provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1 and enhancement of his sentence for obstruction of justice under U.S.S.G. § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001, or as a contempt of the Court.

24. This Plea Agreement concerns criminal liability only. Except as expressly set forth in this Plea Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Plea Agreement are limited to the United States Attorney's Office for the Middle District of Tennessee and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities.

## Waiver of Appellate Rights

25. Regarding the issue of guilt, Defendant hereby waives all (i) rights to appeal any issue bearing on the determination of whether he is guilty of the crime to which he is agreeing to plead guilty; and (ii) trial rights that might have been available if he exercised his right to go to trial. Regarding sentencing, Defendant is aware that 18 U.S.C. § 3742 generally affords a defendant the right to appeal the sentence imposed. Acknowledging this, defendant knowingly waives the right to appeal any sentence that includes a term of imprisonment of 30 months in the custody of the Bureau of Prisons and 3 years of supervised release. Defendant also knowingly waives the right to challenge the sentence imposed in any motion pursuant to 18 U.S.C. § 3582(c)(2) and in any collateral attack, including, but not limited to, a motion brought pursuant to 28 U.S.C. § 2255 and/or § 2241. However, no waiver of the right to appeal, or to challenge the adjudication of guilt or the sentence imposed in any collateral attack, shall apply to a claim of

14

involuntariness, prosecutorial misconduct, or ineffective assistance of counsel. Likewise, the United States waives the right to appeal any sentence that includes a sentence of 30 months in the custody of the Bureau of Prisons and 3 years of supervised release.

### Other Terms

26. Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

27. Should defendant engage in additional criminal activity after he has pled guilty but prior to sentencing, defendant shall be considered to have breached this Plea Agreement, and the government at its option may void this Plea Agreement.

### Conclusion

28. Defendant understands that the indictment and this Plea Agreement have been or will be filed with the Court, will become matters of public record, and may be disclosed to other persons.

29. Defendant understands that his compliance with each part of this Plea Agreement extends until such time as he is sentenced, and failure to abide by any term of the Plea Agreement is a violation of the Plea Agreement. Defendant further understands that in the event he violates this Plea Agreement, the government, at its option, may move to vacate the Plea Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Plea Agreement, or may require defendant's specific performance of this Plea Agreement.

30. Defendant and his attorney acknowledge that no threats have been made to cause defendant to plead guilty.

31. No promises, agreements, or conditions have been entered into other than those set forth in this Plea Agreement, and none will be entered into unless memorialized in writing and signed by all of the parties listed below.

32. <u>Defendant's Signature</u>: I hereby agree that I have consulted with my attorney and fully understand all rights with respect to the pending indictment. Further, I fully understand all rights with respect to the provisions of the Sentencing Guidelines that may apply in my case. I have read this Plea Agreement and carefully reviewed every part of it with my attorney. I understand this Plea Agreement, and I voluntarily agree to it.

Date: 7/18/19

_____
AHMED MOHAMED SHEIKH OSMAN
Defendant

16

36. <u>Defense Counsel Signature</u>: I am counsel for defendant in this case. I have fully explained to defendant his rights with respect to the pending indictment. Further, I have reviewed the provisions of the Sentencing Guidelines and Policy Statements, and I have fully explained to defendant the provisions of those guidelines that may apply in this case. I have reviewed carefully every part of this Plea Agreement with defendant. To my knowledge, defendant's decision to enter into this Plea Agreement is an informed and voluntary one.

Date: 7/18/19

_____
MICHAEL HOLLEY
Attorney for Defendant


Respectfully submitted,

DONALD Q. COCHRAN
United States Attorney

By: _____
JOSEPH P. MONTMINY
Assistant U.S. Attorney

_____
ROBERT E. MCGUIRE
Deputy Chief

17